'IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TANEESHA R. PARKER, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO.: 2:19-cv-782-MHT-SRW |
| VALLEY NATIONAL BANK CORP., d.b.a. Valley Bank, formerly known as Aliant Bank, | ) |
| Defendant. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**[1]

This matter is presently before the court on defendant's motion for summary judgment. Doc. 8. Plaintiff filed an opposition to defendant's motion, Doc. 16, and defendant replied, Doc. 19. Upon review of the motion and the record, the court concludes that the defendant's motion for summary judgment is due to be granted.

**SUMMARY JUDGMENT STANDARD**

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For summary judgment purposes, an issue of fact is "material" if, under the substantive law governing the claim, its presence or absence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant fails to satisfy its initial burden, the motion for summary judgment will be denied.

---

[1] Senior United States District Judge Myron H. Thompson referred this matter to the undersigned Magistrate Judge for consideration and disposition or recommendation on all pretrial matters pursuant to 28 U.S.C. § 636. *See* Doc. 3.

*Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1810 (2013). If the movant adequately supports its motion, the burden shifts to the opposing party to establish – "by producing affidavits or other relevant and admissible evidence beyond the pleadings" – specific facts raising a genuine issue for trial. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011); *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010); Fed. R. Civ. P. 56(c)(1)(A). "All affidavits [and declarations] must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence[.]" *Josendis*, 662 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). The court views the evidence and all reasonable factual inferences in the light most favorable to the nonmovant. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). However, "the nonmoving party 'must do more than show that there is some metaphysical doubt as to the material facts," and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (internal citations omitted). "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (citation omitted) (internal quotation marks omitted).

## BACKGROUND

Plaintiff Taneesha R. Parker commenced this action against defendant Valley National Bancorp.[2] Doc. 1. Plaintiff alleges that she was denied a promotion to Branch

---

[2] While plaintiff refers to defendant as "Valley National Bank Corp.," defendant avers that its correct name is Valley National Bancorp.

Manager and terminated from her employment by defendant on account of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); she also maintains that defendant's actions breached an express and implied contract. *See* Doc. 1. Defendant filed a motion for summary judgment and a brief supporting the motion. Doc. 8.

Defendant's brief contends that plaintiff's claims are precluded by a Separation Agreement and Release ("the agreement"), signed by both parties, in which plaintiff released and waived all potential claims arising out of plaintiff's employment with defendant. *See* Doc. 8 at 1-3; Doc. 8-1 ¶¶ 304. Defendant mantains that plaintiff voluntarily and knowingly released defendant from all claims by voluntarily and knowingly signing the agreement in exchange for a lump sum payment, and that plaintiff's contract claims are also barred by the statute of limitations.

In response, plaintiff contends that defendant inquired about whether plaintiff would sign the agreement seven days prior to the end of the 45-day consideration period of the agreement, that defendant emailed and called her numerous times to ask about the agreement, and that, as a result of the foregoing, plaintiff felt coerced by defendant to sign the agreement prior to the expiration of the consideration period. *See* Doc. 16.

While defendant does not dispute that it sent an email to plaintiff asking whether she would sign the agreement, defendant's reply maintains that the language and context of the email demonstrates that it was not intended to pressure plaintiff but instead to check on the status of her consideration of the agreement. Doc. 19 at ¶¶ 4-5. Defendant further

argues that plaintiff's allegation that she received numerous calls and other emails from defendant is not borne out by the evidence and insufficiently specific to support her contention. *See id.* ¶¶ 6-7. Defendant also avers that plaintiff's decision not to exercise the agreement's seven-day revocation period reflects her knowing and voluntary acceptance of the agreement. *See id.* ¶ 8. Defendant contends that plaintiff has not brought foward any evidence that would create an issue of fact as to whether she indeed made a knowing and voluntary waiver of her claims by signing the agreement and that, therefore, plaintiff's claims should be dismissed. *Id.* ¶¶ 11-12.

## UNDISPUTED MATERIAL FACTS[3]

In considering defendant's motion for summary judgment, the court views the facts in the light most favorable to the plaintiff as the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

I.  Plaintiff's Employment and Termination

Plaintiff was employed by Aliant Bank[4] from 2001 until 2013. *See* Doc. 1 at ¶ 8; Doc. 8 at ¶ 1. Plaintiff was initially hired in the position of "New Accounts Representative"

---

[3] These are the facts for summary judgment purposes only – they may or may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.") (citation and marks omitted). Also, the "facts" set out herein are gleaned from the parties' evidentiary submissions but not from counsels' unsubstantiated statements in the parties' briefs. "Statements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). *See also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

[4] Plaintiff sometimes refers to Aliant Bank as the defendant. *See* Doc. 1. Defendant Valley National Bancorp acquired USAmeriBank on November 1, 2018, and, therefore, USAmeriBank is defendant's predecessor in interest. *See* Doc. 8-1 at ¶¶ 3-4. References to Aliant Bank, which was a division of USAmeriBank, *see* Doc. 16-2, are understood by the court to refer to USAmeriBank

and was promoted to the position of "Assistant Branch Manager" in 2011. *See* Doc. 1 at ¶ 8. At the time that plaintiff applied for the position of New Accounts Representative, she was enrolled to attend Auburn University at Montgomery and, in 2011, she was attending Troy University for a degree in finance. *See* Doc. 8-2 at 9, 16. Plaintiff received a positive performance review in March, 2011. *See id.* at 13-16. In her position as Assistant Branch Manager, plaintiff's responsibilities were as follows:

1. Achieve established branch sales production and operational goals.
2. Maintain complete operational soundness of the branch.
3. Ensure branch and team compliance with all bank policies and procedures.
4. Promote sales and ensure that all branch staff is current on sales training modules.
5. Lead branch team in exceeding assigned referral goals and achieve personal cross-sell goals.
6. Work with the branch manager to recruit, hire, train, evaluate and motivate a top performing team.
7. Assist in planning and directing the sales and service activities of the branch.
8. Perform teller and customer sales representative duties, when necessary.

Doc. 16-4 at 1.

In 2012, USAmeriBank decided to close the branch at which plaintiff was employed, which resulted in an offer of severance packages to four employees, including plaintiff, under the USAmeriBank Realignment Program. *See* Doc. 8-2 at 23-24. Plaintiff signed the agreement offered to her under that program, which stated that the effective date of plaintiff's termination would be March 1, 2013. Doc. 8-2 at 18.

II. Plaintiff's Application for the Branch Manager Position

---

and to defendant Valley National Bancorp as successor in interest. This court's reference to defendant Valley National Bancorp is intended to include reference to its predecessor in interest.

On October 16, 2012, while working as the Assistant Branch Manager at the southeast branch of Aliant Bank, plaintiff applied for the Branch Manager position at the Bibb Street branch. Doc. 16 ¶ 1. The Branch Manager posting for which plaintiff applied listed the following requirements:

> 1. Achieve established financial center production, operational and service goals.
> 2. Lead business development efforts and enhance community relations while maintaining a [illegible].
> 3. Plan and direct the sales and service activities of the financial center.
> 4. Recruit, hire, train, evaluate and motivate a top performing team.
> 5. Ensure financial center and employees are in compliance with all bank policies and procedu[res].
> 7.[sic] Maintain operational soundness of the financial center.
> 8. Perform teller and financial specialist duties when necessary.

Doc. 16-4 at 2.

Plaintiff interviewed for the Branch Manager position on October 24, 2012, and learned that someone else was hired for the position on November 16, 2012. *Id.* ¶ 2. Subsequently, plaintiff was contacted by USAmeriBank about a Branch Specialist position at the Vaughn Road branch of USAmeriBank. Doc. 16 ¶¶ 5-6; Doc. 16-1; Doc. 16-2.

### III. Facts Related to the Separation Agreement and Release

Plaintiff's agreement with defendant states that she released

> [USAmeriBank]; all of its affiliates (including without limitation USAmeriBank and any entity affiliated with or comprising USAmeriBank); its successors, assigns of the Company and its affiliates; and each of their respective officers, directors, shareholders, employees and agents from any and all claims, actions, causes of action, rights, suits, demands, obligations, and/or liabilities, joint or several, present, past or future, known or unknown, of whatever description, both at law and in equity. Including, without limitation, all claims of employment discrimination, unjust or improper dismissal or treatment, intentional or negligent torts, retaliation, back pay, front pay. Injuries damages, reinstatement, future employment opportunities and all other claims relating to Employee's employment or separation from employment with the Company that Employee may now have or may ever

> have had, including without limitation, any claims which may be made by Employee or on Employee's behalf under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Age Discrimination in Employment Act, the Equal Pay Act, or the Fair Labor Standards Act, the Americans with Disabilities Act, the Family and Medical Leave Act, with the exception of claims arising out of the breach of the Company's obligations under this Agreement. Employee represents and warrants that Employee does not have any current charge, claim, or lawsuit pending against the Company.

Doc. 8-2 at 20. In exchange for the release of claims by plaintiff, the agreement provides for plaintiff to receive a lump sum severance payment of $13,073.08, equivalent to 22 weeks of pay. *Id.* at 18. The agreement explicitly states that defendant had no prior obligation to make a severance payment to plaintiff. *Id.* at 19. The agreement also (1) includes a paragraph entitled "Independent Legal Counsel" which advises and encourages plaintiff to consult with an attorney before signing the agreement, (2) provides a consideration period of up to 45 days, and (3) contains a revocation clause allowing plaintiff to revoke the agreement up to seven calendar days after signing the agreement.

On December 21, 2012, Bryan A. Rogers, Vice President and Human Resources Manager with AliantBank, emailed plaintiff inquiring about the status of her severance package. *See* Doc, 16-3. Rogers wrote, "I wanted to check with you to see if you've had an opportunity to review and submit your severance package. If you have any questions, please give me a call. Thanks." *Id.*

Plaintiff signed the agreement prior to the expiration of the 45-day consideration period, which ended on December 28, 2012; accepted the lump sum severance payment;

and did not revoke her consent to the agreement during the seven-day revocation period. Doc. 8-1 ¶ 17; Doc. 8-2 at 21.[5]

## DISCUSSION

Plaintiff's claims are (1) a Title VII claim for defendant's failure to promote plaintiff to the position of Branch Manager on the basis of race, (2) a breach of express contract claim for defendant's termination of plaintiff's employment based on her race, and (3) a breach of implied contract claim for defendant's termination of plaintiff on the basis of race.

Defendant moves for summary judgment on the ground that plaintiff signed a separation agreement and release in which plaintiff knowingly and voluntarily waived all potential present and future claims against defendant arising from plaintiff's employment by defendant's predecessor in interest. As noted above, the agreement advised and encouraged plaintiff to consult with an attorney prior to signing the agreement and included a 45-day consideration period during which plaintiff could have refused the offer, and a seven-day revocation period during which plaintiff had the right to revoke her assent to the agreement. The undisputed Rule 56 record evidence shows that plaintiff knowingly and voluntarily signed the agreement, and plaintiff has not pointed to any specific facts which

---

[5] Defendant submits that plaintiff executed the agreement on November 13, 2012, the day it was presented to her. Doc. 8 at 2-3. The declaration of Juliet Culp, a Banking Officer, HR Business Partner, employed by Valley National Bancorp, attests that plaintiff signed the agreement on November 13, 2012, Doc 8-1 ¶ 6. The agreement, attached as an exhibit to defendant's motion for summary judgment, is dated on November 13, 2012 and gives no indication that it was signed on a different date. *See* Doc. 8-2 at 18-22. Plaintiff asserts that she did not sign the agreement on November 13, 2012, but at some later date on or after receiving an email from defendant about the agreement. Doc. 16 ¶ 7. However, as plaintiff does not dispute that she signed the agreement, or that she did not exercise her right to revocation, the dispute about the date on which the agreement was executed is not material to the issues presently before the court.

raise a genuine issue for trial. Therefore, plaintiff cannot maintain her Title VII or breach of contract claims in this court, and summary judgment is due to be granted in favor of defendant.

    I.      Statute of Limitations

Plaintiff contends that defendant's employee manual constituted an express contract not to discriminate based on race, which was breached when she was terminated on the basis of her race. Doc. 1 at 4. Plaintiff also asserts that defendant's employee manual constituted an implied contract not to discriminate on the basis of race, which was breached when plaintiff was terminated. *Id.* at 4-5. In addition to arguing that plaintiff waived these claims by signing a written agreement, as discussed in the subsequent section, defendant maintains that the relevant statute of limitations bars plaintiff from making a claim based on either express or implied contract. Doc. 8 at 14-15.

In Alabama, "[t]he statute of limitations for a claim based on a contract is six years. Ala. Code. 1975, § 6-2-34(9). This six-year period begins to run when the contract is breached." *AC, Inc. v. Baker*, 622 So. 2d 331, 333 (Ala. 1993) (citing *Stephens v. Creel*, 429 So. 2d 278, 280 (Ala. 1983); *Lipscomb v. Tucker*, 314 So. 2d 840, 850 (Ala. 1975)).

Plaintiff's complaint was filed on October 11, 2019. *See* Doc. 1. She has not alleged a date for her termination. Despite plaintiff's omission of a termination date from her pleadings, the record evidence indicates that plaintiff signed the agreement on November 13, 2012 and her employment was terminated on March 1, 2013 pursuant to the agreement. *See* Doc. 8-2. Defendant contends that it is clear that plaintiff's employment ended on November 13, 2012, the earlier date. While plaintiff has not alleged that March 1, 2013 was the date on which the breach of contract occurred, even if that date were deemed to be

her termination date, plaintiff could not file her claim at any time after March 1, 2019 under the six-year statute of limitations. Therefore, plaintiff's expres and implied contract claims fail irrespective of any agreement by plaintiff to waive claims against the defendant, and defendant's motion for summary judgment should be granted as to those counts.

  II.  Voluntary and Knowing Waiver of Rights

  Plaintiff argues that defendant's motion for summary judgment should be denied because she felt coerced into signing the agreement. Doc. 16 at 3. As discussed above, plaintiff received an email from defendant's human resources department on December 21, 2012, asking whether she had been able to "review and submit" the agreement and whether she had any questions. Doc. 16-3. Plaintiff also maintains that, "along with emails, [plaintiff] received several calls with attempts to persuade [her] to accept reduced positions or sign the severance agreement." Doc. 16 ¶ 7. Plaintiff asserts that, during the 45-day consideration period included in the agreement, "HR should have allowed [her] that time and not inquire on submission" before the expiration of the 45-day period. *Id.* However, plaintiff has not presented any evidence substantiating any calls or emails apart from the December 21 email, and has not alleged specific details as to the frequency, content, and nature of any additional emails and calls.

  Defendant argues that the motion for summary judgment should be granted because plaintiff's consent to the settlement was voluntary and knowing. Specifically, defendant contends that plaintiff is sophisticated enough to understand the effect of the waiver language in the agreement, that the language of the agreement was sufficiently clear in stating that plaintiff would waive all claims, that plaintiff had ample time to consider the agreement and seek assistance of counsel, that the agreement encouraged plaintiff to

consult with an attorney before signing, and that plaintiff received adequate consideration in exchange for her waiver.

In the Eleventh Circuit, a "waiver of remedial statutory rights must be scrutinized under the 'totality of circumstances' to ensure that the release was knowing and voluntary." *United States ex rel. Higgins v. HealthSouth Corp.*, 2019 U.S. Dist. LEXIS 146351, at *11-12 (M.D. Fla. Aug. 28, 2019) (citing *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir. 2007) (applying the totality of circumstances test to the release of a Title VII claim)). The court's review of the totality of the circumstances involves review of the following objective factors:

> the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

*Myricks*, 480 F.3d at 1040 (quoting *Puentes v. United Parcel Serv. Inc.*, 86 F.3d 196, 198 (11th Cir. 1996). Each of the factors articulated in *Puentes* must be considered and independently analyzed by the district court. *See Bledsoe v. Palm Beach Cty. Soil & Water Conservation Dist.*, 113 F.3d 816, 820 (11th Cir. 1998).

Applying the *Puentes* factors, the court finds that each factor supports the conclusion that plaintiff knowingly and voluntarily consented to the agreement and released her claims. The Eleventh Circuit has explained that prior industry experience and attendance at college classes related to an employee's industry are sufficient education and business experience to render consent to a waiver knowing and voluntary, and that – even where a plaintiff took only one day to consider a severance agreement – there was no

material issue of fact as to whether a plaintiff's waiver of claims was knowing and voluntary where the agreement expressly provided a 21-day consideration period. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1124-25 (11th Cir. 2014). Plaintiff's level of education, her 10-year experience working with defendant, her responsibilities as an Assistant Branch Manager, and her representations that she was able to perform the job of Branch Manager are sufficient to establish that she had the necessary education and business experience to understand the agreement and waiver of her claims. Likewise, the agreement's 45-day consideration period was sufficient time for her to consider the agreement before signing it. Further, the language of the agreement is explicit in describing the nature and scope of claims waived by the agreement. The agreement expressly states that plaintiff was advised and encouraged to consult with legal counsel prior to signing the agreement, and the consideration of 22 weeks' pay offered in exchange for the agreement was ample where defendant had no prior obligation to make severance payments to plaintiff.

Plaintiff does not argue that she lacked the education or business experience necessary to understand the agreement, that the agreement was unclear in its terms, that she did not have an opportunity to consult with an attorney, that defendant discouraged her from consulting with an attorney, or that the consideration given in exchange for her waiver was inadequate compared with the benefits to which she was already entitled. Instead, she contends only that she was coerced into signing the agreement. However, plaintiff makes only bare and conclusory allegations that she was forced to sign.

Applying the ordinary meaning of the word "coerce" in the context of a breach of contract case involving alleged violations of both state and federal statutes, the Eleventh

Circuit has explained that voluntary consent to an agreement without any evidence of force, threat, or pressure to consent indicates no element of coercion. *See Long-Lewis Sterling Western Star of Bessemer v. Sterling Truck Corp.*, 460 F. App'x 819, 820 (11th Cir. 2012) (citing Black's Law Dictionary 294 (9th ed. 2009); Webster's Third New International Dictionary of the English Language, Unabridged 439 (1993)). Here, based on defendant's neutrally worded email inquiring about the status of the severance agreement, and the lack of any substantiation for plaintiff's allegations of numerous phone calls and emails, the court cannot conclude that any force, threat, or pressure to consent to the agreement was present. Examining the record evidence in the light most favorable to the plaintiff, the court finds that plaintiff has not succeeded in raising a genuine issue for trial as to whether she knowingly and voluntarily released the Title VII and contract claims presently before the court.

## CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that

1. The defendant's motion for summary judgment be GRANTED.
2. This case be dismissed with prejudice.
3. Judgment be entered in favor of the defendant and against the plaintiff.

On or before **November 17, 2020**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which an objection is made. Frivolous, conclusive, or general objections will not be considered by the court.

Failure to file written objections to the proposed factual findings and legal conclusions set forth in the Recommendation of the Magistrate Judge shall bar a party from

a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact [and law] and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 3rd day of November, 2020.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge